177 La. 898

### Succession of COLEMAN.

### JONES et al. v. COLEMAN et al.

### No. 32008.

Supreme Court of Louisiana.

July 7, 1933.

Theus, Grisham, Davis & Leigh, of Monroe, for appellant John E. Adams.

Munholland & Munholland, of Monroe, for interveners-appellees.

OVERTON, Justice.

Mrs. Sallie Jones, now deceased, was the widow of Moses A. Jones, deceased. Claude C. Jones, William L. Jones, and Gerald T. Jones were born of this marriage. Gerald T. Jones died, leaving descendants, who, with Claude C. and William M. Jones are the heirs of Mrs. Jones, who died as Mrs. Coleman.

Some years after the death of Mrs. Jones' first husband, Moses A. Jones, Mrs. Jones married her second husband, W. J. Coleman, one of the defendants in the cause entitled C. C. Jones et al. v. W. J. Coleman et al., appearing in the title, and an opponent to the executor's account in the succession of Mrs. Coleman. Coleman fell dead in the courtroom during the hearing of evidence and before his time came to testify. His executor has been made a party to the suit, in his place. No issue was born of his marriage to Mrs. Jones.

For some years before, and at the time of, her marriage to Coleman, Mrs. Jones was engaged in the mercantile business. Following her marriage to Coleman in 1893, she continued in that business, without interruption, until her death, on September 12, 1930. Through her industry and good business judgment, she accumulated an estate worth exceeding $71,000. There was no community of acquêts and gains existing between the parties, for a prenuptial contract, signed by the parties, provided that there should be none. Coleman was in the employ of Mrs. Jones at the time of their marriage.

Mrs. Jones died testate. Her last will and testament, which is in olographic form, is dated June 1, 1909. It left to her husband, W. J. Coleman, $5,000, to be paid in cash, and the residue of her estate was left to her heirs. Her son, W. L. Jones, was named as executor without bond.

By a codicil, in olographic form, dated Oc-

tober 11, 1924, Mrs. Coleman increased the legacy to her husband from $5,000 to $7,000, and also left him her interest in a Hudson coach, explaining that her husband owned a $250 interest in the coach. She, in the codicil, also left to her sister, Mrs. Bradley, $1,000 in Liberty bonds, $100 to Will Trippett, and $1,000 above his share of the estate to her son and testamentary executor, W. L. Jones; the remainder of her estate she directed to be divided among her heirs.

The will, as well as the codicil, was admitted to probate. W. L. Jones qualified as executor, and, in due course of administration, filed his account. Coleman was placed on the account as a legatee for $5,000, as the legacy to him was originally written, instead of $7,000, as written in the codicil. This account brought forth an opposition by Coleman, resting upon the sole ground that he should be carried on the account as a legatee for $7,000, as written in the codicil. This was followed by an opposition by C. C. Jones and the heirs of Gerald T. Jones to the account, attacking the bequests in the codicil as a whole, and alleging that the executor should account for the following property, which was in the possession of the testatrix and Coleman, and, after the death of the testatrix, in Coleman's possession, to wit: $9,000 of Liberty bonds, a claim for $685, one for $185, a radio of the value of $300, and a Marmon sedan automobile, of the value of $1,800. Prior to the filing of this opposition, a direct action was brought by C. C. Jones and the heirs of Gerald T. Jones to annul the codicil, for the reason that it was not intended to be a codicil and that it bore no definite date.

Upon the trial there was judgment dismissing the direct action to annul the codicil, and the executor was ordered to pay Coleman's executor $7,000 instead of $5,000, and the legatee, Mrs. Bradley, instituted by the codicil, $1,000, and Will Trippett, named as legatee in the codicil, $100. The court found that Coleman's succession was entitled to one of the Liberty bonds for $500, being one found upon his person at the time of death, also the radio and the Marmon sedan, and rejected the $685, claimed by opponents as wrongfully withheld by Coleman, but held the succession of Coleman liable for opponents' claim of $185, and also held his succession liable for $2,600 of Liberty bonds, which the court found that Coleman had, without adequate reason, possessed himself of during the last illness of his wife, and while she was in a state of coma. These amounts were ordered paid by deducting them from Coleman's legacy.

The succession of Coleman has alone appealed from the foregoing judgment. The executor of Mrs. Coleman's will, C. C. Jones, Mrs. Geraldine Jones Canby, and Mrs. Irma Jones King have answered the appeal by asking that the judgment below be amended by charging the succession of Coleman with two additional Liberty bonds, amounting to $500 each, by decreeing that the $685 claim of opponents against the succession of Coleman be allowed, and by decreeing the succession of Mrs. Coleman to be the owner of the Marmon automobile, of the value of $1,285, and charging the succession of Coleman with that amount.

It is urged by the succession of Coleman that this answer was filed too late. This contention seems to be well grounded. The appeal was fixed for May 31, 1933, for hearing. The answer was filed two days before the date of hearing, namely, on May 29, 1933, and therefore was not filed three days before the date fixed for argument, and hence was filed too late. C. P. art. 890; Reily v. Johnston, Sheriff, 119 La. 119, 43 So. 977. The fact that the argument on the appeal went over, under the rules of court, without a reassignment, from day to day, until June 6, 1933, when it was heard, is of no moment; this not being equivalent to a reassignment of the case. The fact that the answer was mailed from Monroe, La., on Saturday, May 27, 1933, and did not reach the clerk presumptively in time to be filed Saturday (Saturday afternoon being a half legal holiday, and the next day, Sunday, being a full legal holiday), and not until Monday the 29th, does not alter the case. The count is made, under the Code, from the day the answer is filed—not sent to be filed—to the day fixed for argument. Litigants must present their pleadings timely for filing. Appellees had from July 26, 1932, the day the appeal was filed, to Saturday morning, May 28, 1933, three days before the date fixed for argument, to file their answer, and have no one to blame but themselves for its untimeliness. Therefore the answer cannot be considered. Without so deciding, however, we may say we are not inclined to think that, upon the whole, appellees have lost anything by the delay.

Passing to the remainder of the case before us, the direct action to annul the codicil, as we appreciate the situation, is not before us. No appeal has been taken from the judgment, by the present appellees, rejecting the demand to annul. Upon the face of the record, it would appear useless to have taken one, for the contentions as to the nullity of the codicil are without merit, since the codicil, upon its face, shows clearly that it was intended to be a codicil to the will, and the ground of attack, relating to the uncertainty of its date, the date being written "Oct. 12/24," is without foundation, such a date being a certain date, and not an uncertain one. Succession of Kron, 172 La. 666, 135 So. 19; Succession of Caro, 175 La. 402, 143 So. 355. The codicil being a true codicil, and the date thereof being certain, it follows that Coleman's opposition asking to be placed

upon the executor's account as a legatee for $7,000, instead of $5,000, must be sustained.

■ This leaves to be decided two questions only, namely, the correctness of the judgment, condemning the succession of Coleman to pay the succession of Mrs. Coleman, the value of Liberty bonds, said to have been taken possession of improperly by Coleman, during the illness of Mrs. Coleman, and also the correctness of the judgment condemning the succession of Coleman to pay the succession of Mrs. Coleman $185, out of rents collected.

The opinion of the trial judge correctly and tersely summarizes the conclusions that should be drawn from the evidence on the first of the foregoing questions, to be answered, as follows:

"Interveners and third opponents have shown conclusively by the testimony that seven thousand nine hundred and fifty ($7,950) dollars of Liberty bonds of various issues, were on hand and owned individually by Mrs. Coleman, January 14, 1923, and it was shown conclusively that thereafter, during the lifetime of Mrs. Coleman, she sold four thousand eight hundred and fifty ($4,850) dollars of these bonds and the proceeds of said sale were traced to the personal account of Mrs. S. Coleman; this left a remainder in bonds of three thousand one hundred ($3,100) dollars."

The trial judge, in his analysis of the evidence, which we find to be correct, then traces the bonds down to August 9, 1930—a month and three days prior to Mrs. Coleman's death—on which date he finds, with the aid of a deposit slip, showing the coupons deposited in bank, at her instance to her credit, on August 9, 1933, and with the aid of certain writing by Mrs. Coleman on an envelope, containing the coupons, and sent on that day by her to her son, the coupons being sent for deposit in the Richland State Bank, that, on August 9, 1930, Mrs. Coleman had in her possession $2,600 in bonds. One bond for $500, which he found to have been in Mrs. Coleman's possession, on a prior date, namely, on January 14, 1923, and which went to make up the $3,100 in bonds, mentioned in the preceding paragraph, being evidently the same bond found upon Coleman's person at death, he found was a donation to Coleman by Mrs. Coleman by manual gift and hence the ultimate finding that on August 9, 1930, Mrs. Coleman had in her possession $2,600 of government bonds. He further found that a day or two prior to Mrs. Coleman's death, and while she was in a state of coma, Coleman, in the presence of Mrs. Coleman's sister, took from Mrs. Coleman's armour a leather folder known to contain Mrs. Coleman's private papers. From this he inferred that Coleman took the $2,600 in bonds; and held his succession liable therefor. In so holding Coleman's succession, the judge said that he did not intend to hold that Coleman had conducted himself criminally, but that it was not unlikely that Mrs. Coleman had an intention to donate the bonds by manual gift to Coleman, but died without delivering them, and that Coleman, in taking the bonds, misapprehended the true status of the bonds, and considered them his.

■ The judge allowed the claim of $185, which represents money collected as rent by Coleman from Mrs. Coleman's property. The reason why the judge allowed it was because the amount was revenue from Mrs. Coleman's property, and the evidence failed to show sufficiently clearly that Coleman was entitled to retain it.

Our review of the evidence, which has been carefully read, satisfies us that the conclusions of the trial judge should remain undisturbed, both as to the $2,600 in bonds and as to the allowance against Coleman's succession of the claim for $185.

The judgment is therefore affirmed, appellant to pay the costs.